TURNBOW v. TALKINGTON.

4-4145

Opinion delivered October 28, 1935.

John G. Rye, V. N. Carter and John L. Carter, for appellant.

Joe D. Shepherd, Robert Bailey and J. B. Ward, for appellees.

SMITH, J. This suit was brought by appellees, the owners of real property and citizens and taxpayers of Pope County, against appellants, the county judge and county treasurer, respectively, of said county, to enjoin them from refunding or extending the maturities of the bonds of said county theretofore issued under Amendment No. 17 of the Constitution of the State of Arkansas.

An answer was filed, exhibiting the records of the county court relating to the original bond issue and the subsequent orders for the refunding of these bonds, together with a statement of the assessed valuations of the county and the revenues derived from the taxes levied thereon. It was alleged in the answer of appellants that these figures show the necessity for refunding, and the answer concludes with the following summary of the county's fiscal condition in relation to these bonds: "As their further answer, defendants aver that for the year 1934 the county levied three mills on the dollar, as reflected by the tax books of said county; that the assessed valuation of the taxable property of said county for said year is $4,344,000; that the estimated income for the year 1935 is $10,946.88 (allowing for delinquencies as reflected by an average over the past three years); that the amount due September 1, 1935, including past-due interest and principal, is $18,400; that if the full five mills were levied under the present conditions it would produce an insufficient amount to meet the September 1, 1935, requirement; and that in any event and under all circumstances there will remain a deficit, with no way to meet said deficit even if the five mills were available."

The county's officials stood on this answer without offering to plead further after a demurrer thereto had been sustained. The question for decision is therefore

whether, under the facts alleged in the answer, the authority existed to refund the bonds.

The same parties appear here as in the case of *Talkington* v. *Turnbow,* 190 Ark. 1138, 83 S. W. (2d) 71. The citizen and taxpayer in that case sought to enjoin the refunding of bonds issued by Pope County under the authority of Amendment No. 10. This amendment authorized counties, cities and incorporated towns to issue bonds to pay indebtedness outstanding at the time of its adoption. The same citizen and taxpayer seeks to enjoin the refunding of bonds issued under the authority of Amendment No. 17, which authorized counties to issue bonds for the construction of courthouses and jails.

In the former appeal we upheld the authority of the county to refund its bonds issued under Amendment No. 10. We there held that it is the general rule that the power conferred on counties to issue bonds in the first instance includes the power to refund them, provided that the refunding bonds do not increase the amount of the outstanding bonds or the rate of interest. In that case the validity of act 102 of the Acts of 1935 was attacked, but it was held to be valid legislation.

This act is entitled "An Act to Permit Counties to Refund Bonded Indebtedness of the Counties, Including Funding Bonds and Bonds Issued for the Building of Court Houses and Jails, and for Other Purposes."

A portion of § 1 of this act reads as follows: "Provided, that no county shall refund its outstanding bonded indebtedness or accrued interest or extend the maturities thereof as herein authorized, so long as the taxes collected from the millage tax heretofore authorized to be levied for that purpose shall be sufficient to pay such indebtedness as same matures."

It was held in the former case that this prohibition has no application where the amount collected from the millage tax is insufficient to pay the original bonds as they mature.

The orders of the county court which are exhibited with the pleadings are to the following effect: The county "issued its serial county courthouse and jail bonds dated April 1, 1931, numbered from one (1) to one

hundred forty-eight (148), both inclusive, due serially on September 1 of the years 1932 to 1961, both inclusive, bearing interest at the rate of five per centum (5%) per annum.'' To pay these bonds and the interest thereon the quorum court levied taxes at the following rates: For 1931, 1½ mills; for 1932, 2 mills; for 1933 and 1934, 3 mills. It appears that four of these bonds of $1,000 each have been paid by the county, and the refunding order provides that the remaining 144 bonds, of $1,000 each, shall be refunded with bonds for the same amounts and bearing the same rate of interest maturing serially from 1940 to 1967.

Three questions were presented by the pleadings for the decision of the court below, according to the brief of appellee:

First: ''That the levying court having made a levy of one and one-half mills to be continued over a period of years, and the county court having entered its order in accordance with such levy, to the effect that same should be extended upon the tax books from year to year, and that bonds were sold, and the original levy was made, pledged for the payment thereof, that the levying court was not authorized to increase such levy at a subsequent term.''

Second: ''That a proposal to refund such bonds and create a new and different form of obligation would have to be submitted to the qualified electors for their approval in order to give the county court jurisdiction to act.''

Third: ''That the county court would not have authority, under the provisions of act No. 102, of the Acts of 1935, to refund the outstanding indebtedness in any event, unless it should definitely appear that collection from the millage tax authorized to be levied for that purpose shall be insufficient to pay such outstanding bonds as they mature.''

Considering collectively these objections to the order and judgment of the county court here questioned, it may be said: The authority to issue the bonds was derived from the vote of the electors of the county at the election which the amendment required to be held to determine whether there should be a bond issue to build

a courthouse or a jail, or both. It was not contemplated that the electors should vote for the levy of any particular rate of taxation. On the contrary, the amendment provides that: "If a majority voting in such election vote for such building or buildings, as the case may be, and for tax, then the levying court at any regular, special or adjourned term thereafter held may levy, in addition to all other taxes now authorized by law, to be levied against all taxable property in the county, a special building tax not exceeding one-half of one per cent. on the dollar of the assessed valuation of such property to pay for such improvements, or to provide a sinking fund for such purpose, which levy, when once made, shall continue and be in force from year to year, and extended on the tax books and collected until sufficient funds are collected to pay off and discharge the cost of such improvement, or any bonds or notes and interest thereon, sold to raise money for the payment of such improvement."

This does not contemplate that the levying court shall in all cases levy a tax of five mills. The inhibition is that it shall not exceed that rate. The court must levy a sufficient rate to meet the maturities, provided the rate shall never exceed five mills. Until this limitation has been reached a discretion abides in the levying court. Building costs as well as assessed valuations may differ widely in the various counties which avail themselves of the provisions of the amendment. The levying courts are therefore given a discretion as to the rate to be levied, subject, however, to the limitation that it shall be sufficient to pay off and discharge the cost of such improvement, provided that in no event shall the rate exceed five mills.

We conclude therefore that a second election was not required to confer authority to change this rate if that action has become necessary. Nor do we think there has been any violation of the portion of act 102 of the Acts of 1935 above quoted.

As was pointed out in the opinion in the case of *Talkington* v. *Turnbow, supra*, this act confers express authority to refund, but this action is not permitted, under the proviso above quoted, "so long as the taxes

collected from the millage tax heretofore authorized to be levied for that purpose shall be sufficient to pay such indebtedness as same matures." We think the phrase, "heretofore authorized to be levied," refers, not to the election or amendment authorizing the tax, but to the action of the quorum court in levying a particular rate. The bonds may not be refunded so long as the taxes collected from this rate are sufficient to pay the indebtedness as the same matures. But the converse of the proposition is also true. They may be refunded if the taxes so collected are insufficient. Here it is alleged, and the demurrer concedes the answer to be true, that the taxes being collected are insufficient for this purpose, and "that in any event and under all circumstances there will remain a deficit with no way to meet said deficit even if the five mills were available."

Under these facts the county court should not be restrained from refunding the bonds, and the decree of the court will therefore be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.