CAMPSTER *v.* SANDERLIN, COUNTY JUDGE.

4-8431                                          208 S. W. 2d 16

Opinion delivered January 12, 1948.

666

*Louis I. Watts,* for appellant.

*Paul Johnson* and *Williamson · & Williamson,* for appellee.

HOLT, J. Appellants, taxpayers and owners of outstanding Drew County Courthouse and Jail Bonds, brought this suit to enjoin the issuance and sale of bonds for the purpose of building a County Hospital.

They alleged in their complaint that in order to construct a courthouse and jail, "the County Court of Drew county, Arkansas, on the first day of September, 1931, entered an order . . . authorizing the issue and the sale of the bonds of said county in the aggregate principal sum of one hundred and fifty thousand ($150,000) dollars to be issued and sold as of September 1, 1931, bearing interest at the rate of five per cent. (5%) per annum . . . , and by said order a pledge was made, including, among other things, the following: 'For the prompt payment of this bond and interest thereon, the said County of Drew hereby pledges its full faith, credit and taxing power, including the additional tax authorized by said Amendment No. 17 to the Constitution and applicable solely to the payment of this bond and other bonds issued for the improvement hereinbefore mentioned.'

"That the bonds described in said order were in fact issued and sold as authorized by the provisions of said order; and bonds numbers one (1) to one hundred and five (105) inclusive, of said series and all interest coupons attached to all of the bonds of said series maturing

on or before September 1, 1947, have been paid; but the bonds maturing on or after September 1, 1948, to-wit: bonds numbers one hundred and six (106) to one hundred fifty-five (155), inclusive, aggregating the principal sum of forty-nine thousand five hundred ($49,500) dollars, and all coupons thereto attached maturing after September 1, 1947, aggregating six thousand four hundred ($6,400) dollars, remain outstanding and unpaid, said principal and interest coupons so remaining outstanding and unpaid, aggregating the sum of fifty-five thousand nine hundred ($55,900) dollars.

"That said County Court order of May 16, 1931, was entered, and said Drew County Courthouse Bonds were issued and sold, pursuant to an election which had been regularly called and held in Drew county, Arkansas, under the provisions of Amendment No. 17 of the Constitution of Arkansas, at which election a majority of the qualified electors of Drew county voting at said election had authorized the construction of a courthouse and jail for Drew county, and the levying of a tax for said purposes.

"That pursuant to the action of the electors of Drew county, Arkansas, above referred to, the Quorum Court of Drew county, Arkansas, legally called and assembled, did on the 16th day of July, 1931, make an initial levy of two (2) mills on the taxable property of Drew county to provide a sinking fund for the payment of said courthouse bonds, . . .

"That at the regular meeting of the Quorum Court of Drew county for the year 1931, . . . said Quorum Court increased the levy of taxes for the purpose of retiring said Drew County Courthouse Bond issue to three (3) mills for the year 1933; . . . "

They further alleged that thereafter the Levying Court annually made a building fund tax levy, which for the years 1932 and 1933 was 3 mills, for 1934, 3½ mills, 4 mills for each year 1935 to 1938, inclusive, no levy at all for 1939, 2 mills for 1940, 3 mills for 1941, 4 mills for each of the years 1942 to 1945, inclusive, and 3½ mills for the year 1946.

That "the last four (4) mill tax levy made for the purpose of retiring said courthouse bonds was levied by the meeting of the Quorum Court held November 19, 1945, . . . "

They further alleged that "under the provisions of Amendment No. 17 of the Constitution of Arkansas the highest millage levied by the Quorum Court of Drew county, Arkansas, for the purposes of retirement of said Drew county courthouse and jail bonds, to-wit, the four (4) mill levy made to be collected in each of the years 1936 to 1939 inclusive, and in each of the years 1943 to 1946 inclusive, became a continuing levy, and may not be lawfully reduced; furthermore the entire taxing power vested in the county under the provisions of said constitutional Amendment No. 17, as amended by Amendment No. 25 to the Constitution of Arkansas, for the purposes therein specified, have been pledged to the holders of said Drew county courthouse and jail bonds, to be used exclusively for the purposes of payment of said bonds and interests accruing thereon and expenses incident thereto; and the taxing power of Drew county for the purpose specified in said constitutional amendments has been thereby exhausted."

That notwithstanding the allegations above set forth, appellee, on January 6, 1947, "entered an 'Order Determining the Necessity for the Construction of a County Hospital' for Drew county, Arkansas, under the provisions of Amendment No. 17 to the Constitution of Arkansas, as amended by Amendment No. 25 to the Constitution," appointed architects, made plans, which appellee approved, including an estimate of $300,000 required to build the hospital; that by said order a special election was called resulting in a vote by the electors favoring the building of the hospital and the building tax to provide for its cost.

They further alleged that "on the 7th day of April, 1947, the defendant again purporting to act in his capacity as County Judge, called a special meeting of the Quorum Court of Drew county which convened on the 12th day of April, 1947, and undertook to levy a five (5) mill tax on the taxable property of Drew county for

the dual purpose of discharging the remaining outstanding Drew county courthouse bonds and interest coupons thereto attached, and paying the cost of construction of the three hundred thousand ($300,000) dollar hospital proposed to be constructed by and for the county of Drew; and the defendant, Roy L. Sanderlin, is now about to proceed, purporting to be acting in his capacity as judge of the County Court of Drew county, Arkansas, to enter an order for the issuing and sale of bonds of Drew county in the aggregate principal sum of three hundred thousand ($300,000) dollars, to provide funds for the construction of said proposed Drew county hospital, under the provisions of Amendment No. 17 to the Constitution of Arkansas, as amended by Amendment No. 25, and to pledge for the payment of said bonds, principal and interest as much as three-fifths part of the proceeds of the five (5) mill tax levied against the taxable property of Drew county, Arkansas, by the Quorum Court at its meeting held April 12, 1947, as above alleged, collectible in the years 1948 to 1951, inclusive, and all of said tax collectible in succeeding years''; that appellee is about to sell bonds in the amount of $300,000 for the erection of said hospital at private sale contrary to the provisions of the constitution and laws of Arkansas.

Their prayer was that appellee be permanently enjoined from selling the hospital bonds.

Appellee answered, admitting all of the material allegations of fact set out in appellants' complaint, but differed with them in their conclusions of law. The answer further alleged that the 5 mill levy of April 12, 1947, was expressly made first ''to pay off and discharge the remaining outstanding indebtedness of the county incurred for the construction of the Drew county courthouse and jail, as evidenced by the remaining outstanding and unpaid 5% courthouse bonds of Drew county, and also to defray the cost of the construction of the proposed Drew county hospital, the construction of which was authorized by the qualified electors of Drew county, Arkansas, at the special election held March 4, 1947, or to provide a sinking fund for said purposes; of which total 5 mill levy, such part thereof as the County Court

of Drew county, Arkansas, may find to be required, not exceeding 3½ mills, shall be allocated to provide funds required for the payment of the principal and interest on the remaining outstanding and unpaid Drew county courthouse bonds, until said Drew county courthouse bond issue and indebtedness thereby evidenced is fully discharged, and the remainder of said 5 mill annual levy shall be allocated to the payment of the costs incident to the construction of said Drew county hospital, and to pay the principal and interest on any notes or bonds of Drew county issued for the purpose of constructing said hospital, or to provide a sinking fund for said purpose."

A demurrer to this answer was overruled by the trial court and upon appellants' refusal to plead further, their complaint was dismissed for want of equity and this appeal followed.

For reversal, appellants say: (1) "The pledge contained in the County Court order of September 1, 1931, authorizing the issuance of courthouse bonds, and as contained in the bonds themselves, prohibits the issuance of any bonds at this time for county hospital purposes." (2) "The appellee is prohibited from issuing and selling bonds for hospital purposes which will require, for the payment thereof, the levy of a tax in excess of one mill." (3) "The appellee is prohibited from selling the hospital bonds at a private sale."

## (1) and (2)

We consider appellants' contentions (1) and (2) together.

In short, appellants earnestly argue that the taxing power of Drew county for the purposes specified in Amendments 17 and 25 to our Constitution has been exhausted, that appellee is without authority to issue additional bonds at this time for hospital purposes since Drew county has contracted with the holders of the remaining outstanding courthouse and jail bonds not to use its taxing power for any other purposes under Amendments 17 and 25 until the courthouse and jail bonds have been paid in full.

We cannot agree.

The situation presented in this case prior. to the 5 mill levy of April 12, 1947, briefly stated, was that the Drew County Levying Court, proceeding under Amendment 17 of the Constitution of Arkansas, on May 16, 1931, after a favorable vote of the electors, levied a 2 mill tax ''to provide a sinking fund from which to pay the principal and interest on the bonds of Drew county in the aggregate principal sum of $150,000,'' the proceeds from the sale of said bonds to be used, and were used, to defray the cost of constructing a courthouse and jail. The effect of this levy, which was duly and properly made, under the provisions of § 5 of Amendment 17, was to make it a continuing one and in force from year to year until the principal and interest of all bonds, and the cost of construction, had been paid in full.

The Amendment, *supra* (§ 5), so provides in the following language: ''If a majority voting in such election vote for such building or buildings, as the case may be, and for tax, then the levying court at any regular, special or adjourned term thereafter held, may levy, in addition to all other taxes now authorized by law, to be levied against all taxable property in the county, a special building tax not exceeding one-half of one per cent. on the dollar of the assessed valuation of such property to pay for such improvements, or to provide a sinking fund for said purpose, which levy, when once made, *shall continue and be in force from year to year, and extended on the tax books and collected until sufficient funds are collected to pay off and discharge the cost of such improvement,* or any bonds or notes and interest thereon, sold to raise money for the payment of such improvement,'' and § 6 provides: '' . . . And the same is hereby secured by said special tax levied for the purpose, which shall be and is hereby pledged as security for the payment of such evidences of indebtedness, and shall never be diverted to, or expended for, another purpose, nor collected for any greater amount or length of time than is necessary to pay off and retire said principal and interest evidenced by such bonds or notes.''

The holders, therefore, of these remaining courthouse and jail bonds have the positive pledge of Drew county that this 2 mill levy will never be reduced and shall continue from year to year until all bonds, with interest and costs, have been paid in full.

Under our holding in *Turnbow* v. *Talkington,* 191 Ark. 492, 86 S. W. 2d 940, in which the initial levy was 1½ mills for the cost of a county courthouse and jail, the levying court of Drew county in the instant case had the continuing discretion and authority to levy a higher rate than the initial 2 mill levy, *supra,* if required to pay the cost of the courthouse and jail so long as the rate did not exceed 5 mills. "Until this limitation has been reached a discretion abides in the levying court."

It is our view, and we so hold, that such additional and increased levies made subsequent to the initial levy authorized by § 5, Amendment 17, will not be effective beyond the year for which the increased rate is voted and that the only continuing levy was the initial levy of 2 mills.

Coming now to the action of the Drew County Levying Court, on April 12, 1947, in which a levy of 5 mills was made for the purpose of constructing a county hospital at a cost of $300,000, the court, on April 12, 1947, following an overwhelming vote of the electors favoring the erection of a county hospital, increased the building fund tax levy to 5 mills, the limit under the Constitutional Amendments, *supra,* allocating to the payment of the few remaining outstanding courthouse and jail bonds the proceeds of 3½ mills of said 5 mills (which was 1½ mills in excess of the guaranteed continuing levy for that purpose) "until said Drew county courthouse bond issue and indebtedness thereby evidenced is fully discharged."

This action of the court had the effect of leaving the 2 mills (originally voted for courthouse and jail bonds) unimpaired and leaving 3 mills, and allocating same as stated, in accordance with our holding in the recent case of *Rogers* v. *Parker, County Judge,* 211 Ark. 957, 203 S. W. 2d 401, in which we said: "Of course, if a tax of less than five mills was levied by the levying court for the

construction of the courthouse, an amount of millage equal to the difference between the rate so levied and five mills would still be available for the construction of a hospital.''

Here, as indicated, the initial continuing levy for the courthouse and jail was 2 mills, which left 3 mills available for the construction of a hospital. Certainly, we think appellants may not complain since 3½ mills of the 5 mill levy—1½ mills above the guaranteed continuing levy—was allocated to pay the remaining courthouse and jail bonds.

### (3)

Appellants' third contention that the bonds must be sold at public sale to the highest bidder is meritorious and must be sustained.

Amendment 17 authorizing the construction of courthouses and jails was voted on in 1928 and declared adopted by the Legislature in 1929. Section 6 of this amendment, in part, provides: ''The County Court, or Judge thereof, may issue and sell interest bearing negotiable bonds or notes in such form as may be deemed proper . . . and sell same upon such conditions and in such manner as the County Court may by order deem proper for the purpose of raising funds for the construction of such improvement.''

Amendment 25 was adopted in 1938 and amended, in effect, § 1 of Amendment 17 by adding the words ''County Hospital'' so that, as thus amended, § 1 of Amendment 25 now reads: ''The power and right is hereby vested in the qualified electors of each respective county in this state by a majority of the said electors voting on the question, to authorize the construction, reconstruction, or extension of any county courthouse, county jail, or *county hospital,* and to authorize the levy of a tax not to exceed one-half of one per cent. on the dollar of the valuation of all properties in such county subject to taxation to defray the cost and expenses thereof, or to take up any indebtedness existing at the time of adoption hereof incurred in building, construction or extending any county

courthouse, jail, or *hospital*." The words in italics being the only ones added.

Prior to the adoption of Amendment 25, the 1929 Legislature, by Act 294, provided: "Section 6. Bonds that may be issued to pay for courthouses or jails, or both, which are now being built or extended, or which may hereafter be built or extended, shall be sold only at public auction or on sealed bids after notice given by order of the county court and published once a week for at least three insertions in some newspaper published and having a *bona fide* circulation in the county, the last insertion to be not less than seven (7) days before the date of sale. Such notice shall state the amount and maturities of the bonds and the purpose for which they are issued. The county court may reject any and all bids for any bonds within the scope of this act, and may order a new publication and a new sale, to be conducted in like manner; but the sale must always be to the highest bidder."

When we treat Amendment No. 25 as enlarging Amendment No. 17 to the extent only of authorizing the sale of bonds for hospitals, other provisions of Amendment 17 remain intact. Yet between adoption of the two amendments the General Assembly saw fit to declare a public policy—one requiring that courthouse and jail bonds be sold at public auction. The language found in § 6 of Amendment 17 authorizing the County Court to sell bonds in such "form" as he may deem proper, and maturing at such "times" as may be determined, and to conduct the sale "upon such conditions and in such manner" as the court may direct, is not inconsistent with the legislative mandate that an opportunity must be given for competitive bidding. It will not be presumed that framers of the Amendment intended to promulgate an ironclad policy whereby competition could be excluded, and Act 294 of 1929 in no sense infringes Amendment 17. All matters expressly bearing upon the court's right to direct the sale are unimpaired when effect is given to Act 294. It is not inappropriate to say, in connection with the case at bar, that there is no suggestion or intimation of irregularity in connection with the proposed

sale of the bonds and the utmost good faith appears to have been exercised. The only difficulty is that there was failure to comply with Act 294.

Accordingly, the decree will be modified to provide for the public sale of the bonds in accordance with the view herein expressed, and in all other respects, the decree is affirmed.